CLERK'S OFFICE US DIST. COURT
AT ROANOKE, VA
FILED
JULIA C. DUDLEY, CLERK
BY: DEC 14 2017
DEPUTY
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| URETEK, ICR MIDATLANTIC, INC., | ) |
| Plaintiff/Counterclaim Defendant, | ) Civil Action No. 3:16CV00004 |
| v. | ) **MEMORANDUM OPINION** |
| ADAMS ROBINSON ENTERPRISES, INC., | ) By: Hon. Glen E. Conrad<br>) Senior United States District Judge |
| Defendant/Counterclaim Plaintiff, | ) |
| and | ) |
| LIBERTY MUTUAL INSURANCE COMPANY, | ) |
| Defendant. | ) |

In this contract dispute, the parties agreed to stay litigation in this court pending arbitration. On March 20, 2017, an arbitration panel issued an award in favor of plaintiff Uretek, ICR Midatlantic, Inc. ("Uretek") against defendant Adams Robinson Enterprises, Inc. ("Adams Robinson"). The matter is currently before the court on Uretek's motion to lift the stay and confirm the arbitration award against Adams Robinson and its surety, defendant Liberty Mutual Insurance Company ("Liberty Mutual"). For the reasons stated below, the court will grant Uretek's motion.

### Background

Adams Robinson, a Kentucky corporation with its principal place of business in Ohio, and Uretek, a North Carolina corporation, entered into a subcontract (the "Subcontract"), under which Uretek agreed to perform certain work for a construction project in Charlottesville,

Virginia. Adams Robinson also secured a payment bond from Liberty Mutual, a Massachusetts corporation.

As relevant here, the Subcontract provided that:

> [I]f [Uretek] fails to supply enough properly skilled workmen or proper materials or refuses to prosecute the work or any part thereof with promptness and diligence, or otherwise violates the terms of this subcontract, then [Adams Robinson] may, after giving [Uretek] forty-eight (48) hours written notice, declare [Uretek] in default of contract, terminate the employment of [Uretek], and take possession of [Uretek's] materials on the Job Site and employ or contract with any other person or persons and to buy any material necessary to complete all work required by this Subcontract. In case [Adams Robinson] shall so take possession of said work or employ or contract with any other person or persons to finish the same, [Uretek] shall not be entitled to receive any further payment under this Subcontract until the said work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid on this Subcontract shall exceed the expenses incurred by [Adams Robinson] in finishing the work, such unpaid balance, after deducting any loss or damage by reason of the premises, including damages for delays and attorney fees, shall be paid to [Uretek] by [Adams Robinson]. In case the cost and expense of such work, including attorney fees, exceeds the unpaid balance, [Uretek] and its surety shall forthwith pay the amount of such excess to [Adams Robinson.]

Subcontract ¶ 3A, Docket No. 18-1. The parties agreed that Ohio law would govern the Subcontract and that they would submit any dispute arising under the Subcontract to arbitration. Id. ¶ 25.

On December 19, 2014, in reliance on Subcontract ¶ 3A, as set forth above, Adams Robinson terminated Uretek's Subcontract for default. In December 2015, Uretek filed a complaint in state court against Adams Robinson and Liberty Mutual to recover payments for its work under the Subcontract. Adams Robinson removed the action to this court.

In February 2016, Adams Robinson and Liberty Mutual, with Uretek's consent, filed a motion to stay the proceedings in this court, pending arbitration. The court granted the motion, and the arbitration proceeded from February 21, 2017 to February 24, 2017 in Dayton, Ohio,

2

before three arbitrators, including two non-lawyers from the construction industry. Liberty Mutual did not participate in the arbitration.

On March 20, 2017, the arbitration panel issued a standard award in Uretek's favor. As a standard, and not a reasoned, award, the arbitrators cautioned that they did not include all of their analysis in the award. See Arbitration Award 5, Docket No. 18-2. However, they did explain that they believed Adams Robinson had properly terminated the Subcontract. Id. at 5. Despite that finding, the arbitrators declined to award Adams Robinson its costs to complete the work under the Subcontract because the balance of good faith between the parties weighed in Uretek's favor. Id. While the parties did not raise Uretek's good faith as a substantial issue during the hearing, the arbitrators found that Uretek employees "put forth a good faith effort to complete their work as designers and builders albeit not adequately or efficiently enough for th[e] panel in fairness to approve [Uretek's] collection of lost profits." Id. As to Adams Robinson, however, the arbitrators found several indications of bad faith, including that Adams Robinson had failed to appropriately notify Uretek of soil issues, withheld payment on at least five properly submitted and approved Uretek pay applications, and inadequately mitigated its damages after terminating the Subcontract. Id. at 5-6.

After addressing all the claims presented by the parties, the arbitrators awarded Adams Robinson $44,538.77 for engineering fees and costs and materials not paid by Uretek and $1,750.00 for arbitration expenses. Id. at 2, 9. The arbitrators expressly declined to award Adams Robinson any amount for its claimed completion costs. Id. at 3. As to Uretek, the arbitrators declined to award lost profits because Uretek did not adequately or efficiently complete its work under the Subcontract, but awarded $305,257.39 for withheld payments and change order requests. Id. at 2, 5, 8.

3

Adams Robinson sought to vacate the award by filing an action in the Southern District of Ohio. Uretek then moved in this court to lift the stay, confirm the arbitration award, and enter judgment against Adams Robinson and Liberty Mutual. Adams Robinson moved to strike Uretek's motion to confirm the arbitration award or to transfer venue to the Southern District of Ohio. The court denied the motion, and on October 11, 2017, the Southern District of Ohio transferred Adams Robinson's motion to vacate the arbitration award to this court.

The parties appeared before the court for a hearing on Uretek's motion to confirm the award on November 13, 2017. The defendants conceded at the hearing that if the court confirms the arbitration award, it will be enforceable against both Adams Robinson and Liberty Mutual.[1] The matter is now fully briefed and ripe for review.

## Discussion

The court's authority to review an arbitration award is "severely circumscribed" because "full scrutiny of such awards would frustrate the purpose of having arbitration at all – the quick resolution of disputes and the avoidance of the expense and delay associated with litigation." Apex Plumbing Supply, Inc. v. U.S. Supply Co., 142 F.3d 188, 193 (4th Cir. 1998). Accordingly, a court will only vacate an arbitration award based on "one of the grounds specified in the Federal Arbitration Act (the "FAA") or one of certain limited common law grounds." MCI Constructors, LLC v. City of Greensboro, 610 F.3d 849, 857 (4th Cir. 2010). The FAA provides four grounds upon which an arbitration award may be vacated. As pertinent here, one ground is that "the arbitrators exceeded their powers, or so imperfectly executed them that a

---

[1] This result is supported by United States ex rel. MPA Construction, Inc. v. XL Specialty Insurance Company, which recognizes the rule that "a judgment against a principal" – even one resulting from an arbitration decision – "conclusively establishes the liability of a surety, as long as the surety had notice of the proceedings against the principal." 349 F. Supp. 2d 934, 942 (D. Md. 2004) (internal quotation marks omitted).

4

mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4).

The "permissible common law grounds for vacating [an arbitration] award include those circumstances where an award fails to draw its essence from the contract, or the award evidences a manifest disregard of the law."[2] MCI Constructors, LLC, 610 F.3d at 857 (internal quotation marks omitted). An award fails to draw its essence from the contract "when an arbitrator has disregarded or modified unambiguous contract provisions or based an award on his own personal notions of right and wrong." Three S Delaware, Inc. v. DataQuick Info. Sys., Inc., 492 F.3d 520, 528 (4th Cir. 2007). "As long as the arbitrator is even arguably construing or applying the contract a court may not vacate the arbitrator's judgment." Upshur Coals Corp. v. United Mine Workers of America, Dist. 31, 933 F.2d 225, 229 (4th Cir. 1991) (emphasis added) (internal quotation marks omitted). An arbitration award exhibits a manifest disregard for the law when: "(1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrator refused to heed that legal principle." Wachovia Sec., LLC v. Brand, 671 F.3d 472, 483 (4th Cir. 2012) (alteration and internal quotations marks omitted).

In this case, the defendants request vacatur of the arbitration award because the arbitrators did not award Adams Robinson its excess costs of completion after finding that Adams Robinson had properly terminated the Subcontract for default. However, after reviewing the record and the parties' arguments, the court concludes that the defendants have not established any grounds for vacating the arbitration award. Specifically, the court

---

[2] In light of the Supreme Court's decision in Hall Street Associates, LLC v. Mattel, Inc., 552 U.S. 576 (2008), the United States Court of Appeals for the Fourth Circuit has recognized that considerable uncertainty exists "as to the continuing viability of extra-statutory grounds for vacating arbitration awards." Raymond James Fin. Servs., Inc. v. Bishop, 596 F.3d 183, 193 n.13 (4th Cir. 2010). Nevertheless, the Fourth Circuit has recognized that "manifest disregard continues to exist" as a basis for vacating an arbitration award, "either as an independent ground for review or as a judicial gloss on the enumerated grounds for vacatur set forth" in the FAA. Wachovia Sec., LLC, 671 F.3d at 483 (internal quotation marks omitted).

5

concludes that the arbitrators did not exceed their authority, that the award did not fail to draw its essence from the Subcontract, and that the arbitrators did not manifestly disregard controlling law.

### 1. Whether the Arbitrators Exceeded their Authority

The court first considers whether the arbitrators exceeded the scope of their authority in declining to award any amount to Adams Robinson for its excess costs of completion. The defendants do not dispute that the issue of completion costs was properly before the arbitration panel. Instead, the defendants' argument amounts to a claim that the arbitrators impermissibly "look[ed] beyond the express provisions [of the Subcontract] in order to interpret, and give meaning to, the [Subcontract]." W. Sugar Coop. v. Int'l Bhd. of Teamsters Local Union 190, 193 F. Supp. 3d 1149, 1155 (D. Mont. 2016). Such a claim does not raise the "question of whether the arbitrator[s] exceeded [their] boundaries." Id. Moreover, the United States Court of Appeals for the Fourth Circuit has recognized that arbitrators do not exceed their authority in failing to base an arbitration award on the express terms of a contract because such an error is one of misinterpretation and does not justify vacatur. Apex Plumbing Supply, Inc., 142 F.3d at 193-94.

### 2. Whether the Award Fails to Draw its Essence from the Subcontract

The court next determines whether the arbitration award must be vacated because it fails to draw its essence from the parties' agreement. According to the defendants, Subcontract ¶ 3A required the payment of Adams Robinson's excess completion costs upon proper termination of the Subcontract because the language concerning completion costs was express and mandatory, thereby barring application of the implied duty of good faith and fair dealing.

6

However, "merely because an arbitrator's decision is not based on an agreement's express terms does not mean that it is not properly derived from the agreement; neither misapplication of principles of contractual interpretation nor erroneous interpretation of the agreement in question constitutes grounds for vacating an award." Apex Plumbing Supply, Inc., 142 F.3d at 194. In Apex, the Fourth Circuit confirmed an arbitration award even though the arbitrator had valued certain inventory items that the parties' agreement expressly stated had no value. Id. at 190, 193-94. The Court recognized that the arbitrator had not acted "irrationally," but had relied on evidence in the record that supported his inventory valuation. Id. at 194.

Here too, the arbitrators did not act irrationally, but relied on evidence in the record of Adams Robinson's bad faith. Although the duty of good faith and fair dealing is not an express term in the Subcontract, it is implied into every contract under Ohio law. Littlejohn v. Parrish, 839 N.E.2d 49, 54 (Ohio App. 2005). To the extent the defendants argue that such a duty conflicts with the Subcontract's provisions on excess completion costs and interest, they are merely claiming that the arbitrators misinterpreted the agreement or misapplied the duty, a claim that does not justify the vacatur of an arbitration award. See id.

Defendants, however, argue that the freedom afforded to arbitrators in interpreting contract provisions has a limit. In support of this argument, the defendants cite two cases: Clinchfield Coal Company v. District 28, United Mine Workers of America, 720 F.2d 1365 (4th Cir. 1983) and Choice Hotels International, Inc. v. SM Property Management, LLC, 519 F.3d 200 (4th Cir. 2008). Both cases are distinguishable.

In Clinchfield, the Fourth Circuit stated that an "award cannot be considered to draw its essence from the contract" if "the arbitrator fail[ed] to discuss critical contract terminology,

7

which terminology might reasonably require an opposite result." Clinchfield Coal Co., 720 F.2d at 1369. In Clinchfield, the Court was deciding between two categories, which required opposite results. Id. at 1368-69. A similar choice was not posed in this case. Moreover, the arbitrators used the Subcontract's terminology of termination and completion costs in making their award. Thus, Clinchfield does not govern this case.

The defendants' reliance on Choice Hotels fares no better. In that case, the Fourth Circuit affirmed the vacatur of an arbitration award made against franchisees who had not received notice of the franchisor's arbitration demand in accordance with the parties' agreement. 519 F.3d at 207. The Fourth Circuit emphasized that there was no evidence in the record that the franchisor informed the arbitrator of the notice provision in the parties' agreement or that the arbitrator investigated the issue of notice, and the evidence that was submitted showed that the franchisor knew how to properly notify the franchisees. Id. at 208-09. Here, however, the record shows that the parties presented the issue of completion costs to the arbitrators, and the arbitrators expressly ruled on that issue.

The defendants' arguments, at best, amount to a claim that the arbitrators misconstrued the Subcontract or inappropriately relied on the implied duty of good faith and fair dealing to deny all excess completion costs. "Such an error, however, even if extant, provides no basis for overturning the panel's decision." Henry M. Jackson Found. for the Advancement of Military Med., Inc. v. Norwell, Inc., 596 Fed. App'x 200, 202 (4th Cir. 2015) (citing Long John Silver's Rests., Inc. v. Cole, 514 F.3d 345, 349 (4th Cir. 2008)). Because the court believes that the arbitrators were at least arguably construing the Subcontract, both express and implied terms, the court declines to vacate the award for failing to draw its essence from the parties' agreement.

8

### 3. Whether the Arbitrators Manifestly Disregarded the Law

Finally, the court considers the argument that the arbitrators manifestly disregarded the law. The defendants contend that the arbitrators disregarded the legal principle that a contractor who has properly terminated a contract is entitled to recoup its excess completion costs as set forth in the parties' agreement. However, "an error of law" does not "constitute[] a ground on which an award can be vacated." Apex Plumbing Supply, Inc., 142 F.3d at 193-94 (internal quotation marks omitted). The defendants have not argued, as generally required, that the arbitrators "correctly state[d] the law, but proceed[ed] to disregard the same." Upshur Coals Corp., 933 F.3d at 229 (internal quotation marks omitted); see also Three S Delaware, Inc., 492 F.3d at 529 (ruling that arbitrator did not manifestly disregard the law where the record lacked any evidence that the arbitrator was made aware of the relevant legal principles). Instead, the defendants' brief is devoid of any claim that the arbitrators were aware of the legal principles raised in the opposition brief. Indeed, the defendants emphasize that two of the arbitrators lacked legal training, a fact that suggests that the arbitrators would not have known the legal principles cited by the defendants without being made aware of them during the arbitration.

Furthermore, courts have found no manifest disregard of the law where arbitrators have implied obligations from the duty of good faith and fair dealing. TiVo, Inc. v. Goldwasser, 560 F. App'x 15, 18-19 (2d Cir. 2014); see also In re WorldCom, Inc., 340 B.R. 719 (S.D.N.Y. 2006) (rejecting argument that arbitrators manifestly disregarded the law in applying principles like the implied duty of good faith and fair dealing because the movant merely alleged an error of law, which is not a ground for vacating an arbitration award). Accordingly, the court concludes that the arbitrators did not evidence a manifest disregard of the law.

9

## Conclusion

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA

For the reasons stated, the court will grant the plaintiff's motion to lift the stay and confirm the arbitration award, which requires the defendants to pay the plaintiff the net amount of $258,968.62 plus interest, to be paid in accordance with the terms of the arbitration award.

The Clerk is directed to send copies of this order to all counsel of record.

DATED: This 14th day of December, 2017.

                                                       /s/ Glen Conrad

                                                 Senior United States District Judge